Final case on our call this morning is agenda number 5, case number 108769, People of the State of Illinois v. Richard D. Kitch. Council may proceed. May it please the court, counsel. My name is Nancy Vincent and I represent the appellant Richard Kitch in this matter. This case is about Crawford v. Washington and the effect that case would have on this case and most other cases where section 115.10 is called into play. And one of those effects is the right to test the state's case through the crucible of cross-examination as contemplated by Crawford and how that right is to be applied in each of these cases. Particularly where you're talking about testimonial hearsay, which is of course the focus of Crawford. Crawford says that testimonial hearsay is inadmissible unless the declarant was available to testify and there was a prior opportunity for cross-examination. And the question to be answered in this case in particular is what exactly it means to be available to testify. The fourth district's position in this case and in SHRP 2 and in Bryant is that a witness is available if that witness is presented to the court regardless of what they say. So long as a person is sitting in the witness chair and that suffices regardless of how much or how little is elicited from that witness. Counsel, do we envision these witnesses being children? For purposes of section 115.10, yes. Most of the time those witnesses are children. That child is put on the witness stand, testifies to nothing concerning the crime, and then takes advantage of the situation that the witness has been submitted for cross-examination. Well, that was actually this Court's concern, I believe, in INRAE-KEF, which was decided not long ago. The resolution of that case was on jurisdictional grounds. But this Court, I believe, did have a concern where the State had presented a complaining witness, did not ask any substantive questions about the elements, and then asserted that that witness was available for cross-examination for purposes of the case. And I do believe that is a concern, and that is actually the concern that section 115.10 was designed to address, where you have a witness who, for whatever reason, cannot or will not testify, despite being placed on the stand. And cannot is failing to answer the questions? I'm sorry? Cannot is failing to answer the questions? For purposes of the availability of cross-examination, I think the effect is the same. The result is the same. Whether or not the... I'm just asking if that's your argument. If refusing to answer questions or... If refusing to answer questions is evidence that the witness is not available. Well, the second district in People v. Lahren basically held that, where you have a child witness who is on the stand but is unable or unwilling, for whatever reason, to answer questions. That witness is unavailable for purposes of cross-examination and for purposes of Crawford. So many of these cases come along, and I'm refusing maybe the facts of this case, but other cases. But I thought in this case, the witness did not refuse to answer any question on the cross-examination. And that's actually, I think, what makes this case different from most of the ones that have been... So she was available. The witness was available. The witness was available for purposes of... In terms of just being there, yes. And the boy, too, for that matter. Any objections raised about it exceeds the limits of direct examination? That never came up. There was no objection to attempting to exceed the scope of direct or cross or whatever. And I think the reason for that was the context in which this occurred. And here, Justice Freeman, you make a good point. These children were there. They were testifying. They were answering questions, at least to the best of their ability. There was no recalcitrance that you can detect from this record on the part of these children. For that reason, there was no reason for the State not to ask them questions designed to elicit the details of the incidents in question. And because the State did not raise these questions, it was the defense's decision not to ask any questions, because the State had not lived up to its responsibility. I don't know if you can make that assumption from this particular record. It's difficult to say. There's no discussion in the record and no... That's one possible reason, but strategically speaking, it's very difficult to say from this record. Did defense counsel ask questions? Yes, she did. And her questions were designed to deal with what was apparently the defense, which was these children didn't like Mr. Kitch, and therefore these allegations... But isn't that a trial strategy on defense counsel's part? Probably. But, you know, defense counsel... It isn't a matter that the witnesses weren't available or did not testify. But I think the strategy... Defense counsel isn't the only attorney there, and strategy also applies to the prosecutor. And clearly the prosecutor... You're only requiring now, you're discussing what your client, the defendant, is arguing, not what other attorneys did or didn't do. No. And in terms of trying to answer your question, the strategy that the State here employed was to place the hearsay on the record first, then present its witnesses. And the strategy, of course, being there that it's a bit safer to use the hearsay because you know the elements are there rather than take a risk with children. Or because the information was already there, for whatever reason, the State may not have chosen to ask the children a lot of the substance of questions. So in terms of strategy, you can't just place it on defense counsel, I don't believe. And in terms of before you can assign a strategy to defense counsel, I think you also have to look at the strategy of the State's attorney. And particularly here, that's relying on the hearsay. Counsel, does it make any difference if the witness answers the question, regardless of what the strategy of the prosecutor is? In terms of availability? If the witness takes a stand, the prosecutor asks no germane questions about the event and tenders the witness for cross-examination. That defense then asks all the questions that can possibly be asked by the facts of the case. Hasn't the witness been available for cross-examination? If in that instance the witness has answered those questions, I think the argument can be made. To Justice Freeman's earlier question, isn't that what happened here? No, because in this first instance, the State did not elicit details of at least some of the counts. But how is the State's failure affect the issue of whether the children appeared for purposes of the confrontation clause? Because in order to have the right for confrontation, the information has to be there to begin with. But the witness was there. Yes. But whose job is it to elicit that information? And I think Melendez-Diaz gives you the answer there. The proponent of the evidence is the one whose responsibility it is to get that information out. And you can't place it on defense counsel to do it. I'm sorry, Counsel. Where did any case or statute ever say that it's one lawyer's duty or another to elicit facts in a trial? Not in those strict terms, but Melendez-Diaz stands for the proposition. And Melendez-Diaz did reject an argument that if the defense wanted that information, then they could have done it themselves. What the Court said in Melendez-Diaz is that's not the point. The point is that you can't use hearsay to make your case for you when you have an otherwise available witness. How many questions would be necessary to satisfy your confrontation clause? I don't know if you can give it a number. I do think that you have to at least elicit the information that you want out before you can rely on hearsay to do it for you. It would have been, at least in the context of this case, a fairly simple proposition to ask these children, because I think had they been asked the question, they would have attempted to answer it to the best of their ability. There's nothing in this record that suggests that they would have shut down at some point. If the State had asked them about it and the answer they couldn't remember, would that be sufficient to allow the introduction of the prior statements? Under a lot of analogies, and I believe under California v. Green, the answer might possibly be yes. I don't know that I can say that for sure, because it's difficult within that context. Theoretically speaking, California v. Green, United States v. Owens, cases like that would seem to indicate that if the child had been asked the question and they said they didn't remember, that the prior statements could have been used in that condition. However, that's not the situation you have here. The situation you have here is we don't know if these children don't remember or not, because nobody asked them, at least about the substance of some of these counts. There was nothing to prevent the defense from asking the questions? Physically, no. But, again, whose responsibility is it? You're placing defense counsel in a terrible position when it was really the State's job to do it to begin with. How do you address the appellate court's position in this case? You start out by saying, you know, this is a Crawford case, and under Crawford, and this is the appellate court, not myself, but under Crawford as long as the declaring is available to testify, prior testimonial statements can come in constitutionally without regard to their reliability. That's Crawford. And I believe the appellate court has taken the position under 115.10 that there are greater protections afforded to the defendant. The bar is raised by requiring sufficient indicia of reliability, even when the declarant is available to testify under 115.10. So you say there's a Crawford issue here. I think that's part and parcel of your facially unconstitutional argument in the appellate court saying, hey, you have even greater protections under this statute. Whether it's greater or lesser or the same is debatable. I think in some cases Miles might be a good example, where the statements were kept out based upon the fact that the court felt they were unreliable. The problem is that whether or not it's greater or lesser protection is really beside the point when you're talking about testimonial statements in Crawford. The fact of the matter is indicia of reliability has no place when you're analyzing testimonial statements. The courts in the first instance have no place anymore using section B-1 of section 115.10. So in terms of the Fourth District's statements, and I think it's in Reed where they say you can either use it or not, that's not an exact quote, but I don't think that's true. Section 115.10, subsection B-1 is eliminated by virtue of Crawford. So I don't know if you can necessarily assume that it's more protection. And especially since in Crawford they talk about the fact that a lot of the elements that are used for indicia of reliability. Would that so-called invalid portion reliability, I guess, be valid in some circumstances? Would it be valid in some circumstances? Some circumstances. Maybe not here, but in some. If you're using non-testimonial statements, I believe it wouldn't. Crawford only applies to testimonial statements. So if the statements that you're analyzing are not testimonial, I'm not sure that B-1 would have any effect on it whatsoever. The problem here, however, is that we're talking about testimonial statements, and subsection B-1 simply has no place in the analysis of the admissibility of testimonial statements. It cannot be used anymore. Crawford made that incredibly clear. And to finish my earlier statement, a lot of the elements of indicia of reliability, the court in Crawford criticized because that is exactly what you're not supposed to be doing when you're analyzing these statements. The indicia of reliability are exactly what cross-examination is supposed to root out. And cross-examination is by the defense counsel? Typically, yes, I would say. I can't think off the top of my head of how it would be reversed, I guess, in some other instance. I can't think of anything off the top of my head. Typically, that's how it would be addressed, yes. But this, the defense counsel chose not to cross. For whatever reason. And, you know, in the context of this record, I can't say that she made a deliberate decision not to cross based upon a fear of getting information out or on the belief and the state's belief as well that that information had already come in pursuant to hearsay. You know, there's no point in asking this child when you can ask somebody else. I don't know. We're just guessing. Isn't there a difference, Ms. Vincent, between defense counsel not fully exercising defendant's right to confront the victims for whatever reason, a strategy or otherwise? And that's not quite the same, though, is it, as being denied the right to confront the victims? There wasn't a denial of right to confront the victims here. And isn't that all that the Confrontation Clause mandates? Well, that would be the Fourth District's position. And our position would be in terms of the denial of the right to confrontation, concerning the information that the state did elicit from these witnesses, confrontation was available. In terms of the information that was not elicited from these witnesses and instead the state chose to rely on hearsay, our position is that confrontation was not provided. Because how is the defense supposed to? How do we know that? Well, we don't, except that the record. Because the defense was given the opportunity for cross-examination, during which it is clear they could have asked the questions that would elicit the material we're talking about. But Melendez-Diaz stands for the proposition that it's really the proponent of the evidence, which would be the state in this position. And again, Melendez-Diaz rejected an argument like what Your Honor is suggesting, which is the defense can do it if they want to. Sure, they can. But in terms of a confrontation issue, whose responsibility is it to do it in the first place? You can't really – you're placing defense counsel in a terrible position of foregoing one right or the other. And in a criminal context, that's not – Melendez-Diaz rejects that proposition. And here in this case, the controversy really surrounds some of the counts, because they are unclear, at least as elicited from the witnesses themselves, in terms of context and time. And the way the state chose to charge these cases is in terms of context and time. So while they're not – context and time is not an element of the offense, but in order to get the jury to be able to differentiate between the counts, that information was crucial. And also in terms of the bolstering aspect of getting these statements out, in terms of credibility of witnesses and that sort of thing. Those statements were necessary for the state in order to get the details out so the jury could differentiate between them. So from that perspective, if the only source of a lot of that information is the testimonial hearsay, that's the problem you've got. If you eliminate that, then what have you got left? You've got some vague testimony. And it's unclear, particularly from the girl, which count she's talking about in any – from four to five to six. And that really was the problem there. And why having the state get that information out on direct from her was so important. And as we talked about earlier, so far this problem has been analyzed in two basic scenarios, a witness that simply refuses to talk for whatever reason, and a witness that asserts memory loss. And most of the cases that have analyzed this say that the latter is held to be available, the witness that asserts memory loss. And that would be California v. Green and United States v. Owens and cases like that. Because that's a witness who's there. They've just asserted memory loss. They're defending or explaining to the best of their ability. As opposed to a witness who is just not talking at all. You can't defend or explain a statement where the witness isn't even talking at all. And our position would be that a witness who isn't even asked the question has more in common with the witness that isn't talking. Because the result is the same. The information isn't there from which cross-examination and attesting of the statement can occur. If that information is to be heard by the jury, then Crawford and Melendez-Diaz demands that it comes from the declarant in the first instance and subjected to the crucible of cross-examination before the verdict can be had. I'd like to say a couple of words about the constitutionality of the statute. I understand that in Ray E. H. and this court, we get to the narrowest issue possible. But in terms of the constitutionality of the statute, the very purpose of the statute is for bolstering. Which, well, I'll complete this remark and then I will reserve a couple of remarks that I have for my third argument on rebuttal. But the problem with Section 115.10 is quite simply the word and. And you cannot sever the two. I see my time is up. So if the court has no other questions, I will address the rest on rebuttal. Thank you. Counsel may proceed. May it please the court. Counsel, I'm Assistant Attorney General Erin O'Connell on behalf of the people of the state of Illinois. Defendant has raised a very interesting and engaging issue in this case. Defendant has presented the question of how much does the state need to put forward on direct examination when they bring forth a child victim of sexual abuse and at the same time admit hearsay statements. It's an interesting issue, but it's simply not presented on the facts of this case. The people here elicited lots of testimony from both victims as to each of the events that were charged in the counts. Counsel has conceded that counts one through three are not really at issue. These were counts that Kirsten testified to in a lot of detail in terms of initial acts of oral penetration and near vaginal penetration. Counsel is contesting the evidence with respect to counts four, five, and six. These were the only counts that pertained to acts of vaginal penetration by the defendant. There is a single element that people need to prove for each of these counts. That is that an act of sexual penetration occurred. People do not need to prove the exact date that this occurred. The people do need to provide testimony that distinguishes between each of these acts. The victim here testified that at a minimum, if we look at her testimony based on the hearsay testimony, starting in June 2002, defendant began having vaginal intercourse with her twice per month until she moved out in March of 2003. If you take that testimony, clearly that would support dozens of convictions for acts of vaginal penetration perpetrated by the defendant. Here the people charged and the defendant was convicted of only three. The victim's testimony, given that this happened twice per month, was more than sufficient to establish that the first act occurred in approximately June 2002. Another act occurred between June 2002 and March 2003. And a final act occurred near the date of move out in March of 2003. Defendant has never really been clear about what more the victim should be expected to testify to to establish the elements of these offenses. There is little more that the victim could have testified to. Given the victim's direct testimony, everything was there for defendant to cross-examine her. There was no question in this case as to going beyond the scope of her direct testimony in order to cross-examine her on these various counts. Defendant has, as there is no dispute, that this is an issue in terms of how much needs to be elicited on direct exam that has divided the court. There is the case of People v. Learn that defendant has relied upon where the second district held that basically the victim only needs to be present and needs to respond to questions. No, I'm sorry. People v. Learn is the case that held that the victim needs to testify to all the events and then be available to be cross-examined as to all those events. Learn is the outlier in that respect, and it's all of the other cases that hold that the child victim need only be present to be cross-examined. So People v. Learn has created a conflict within the second district with the case of People v. Garcia Cordova, with the first district in People v. Major Flisk, and with the fourth district in the cases of People v. Sharp. And that's the primary case, People v. Bryant. Just so I understand exactly what the state's position is, are you agreeing with the defendant that there must be some questioning as it relates to the allegations of the complaint? Or are you saying that the state could put on the witness and ask them their name and their address and that's it? The people haven't taken a position in this case as to exactly how much needs to be elicited. How much needs to be elicited on direct examination. Simply because of the level of detail that was provided on direct examination, the closer question of what would that be sufficient if the people never elicited any testimony whatsoever as to acts of penetration, that would present a closer question. And there is, People v. Learn certainly presents, is closer to the line in that regard. The people put the victim in that case on the stand, and she became, due to emotional reasons, unable to answer certain questions regarding the acts that were charged. And then the second district held that that was insufficient, that she needed to really specifically say, defendant committed this act of penetration. Now the people have filed a PLA in that case, which is now pending before the court. This is case number 109653. That case would provide a much better vehicle for addressing these kind of finer, finer lines of how much testimony is enough for purposes of Crawford and the Confrontation Clause. But you're saying there's some modicum of information that must be elicited. And it's a case-by-case analysis. I would agree with that general proposition. In fact, I don't, it's kind of a theoretical matter in that it's certainly within the people's interest to have the child testify to the events, and the purpose of the statute would then be to corroborate the child's own testimony with these other statements that the child gave to other individuals. So I'm not, that might present a different question if the people were to do that. However, that would seem to be sort of a strange factual scenario, where the people would choose not to present any testimony whatsoever. In most cases where this issue has arisen, the people have asked the questions, and the child victim has either testified, I don't remember, or has just become kind of mute. And refused to go forward because of the trauma of testifying in the courtroom as to these very sensitive matters of sexual abuse. Those are the types of questions that have come before the appellate court. So I don't know, I wouldn't be comfortable taking the position, certainly, that simply putting the child on the stand and having her give her name would be sufficient for purposes of having her testify. But certainly that's an issue not presented here, where the people did ask all of the necessary questions of the child victims. And, of course, the court historically has not issued advisory opinions, and given the facts of the case, deciding where that line should be drawn would be, in this case, simply theoretical. Because here we fall so far on the other side of the line of this is clearly proper, that that question should not be asked. That question just doesn't present itself in the facts of the case. I would like to touch briefly on the argument that this statute is facially unconstitutional. The issue that's been raised is that this statute requires a showing of reliability before any hearsay testimony, whether it's testimonial or non-testimonial, be admitted. The defendant is arguing that by requiring reliability, the statute violates his rights under the Confrontation Clause. However, the defendant is confusing the separate questions of, is testimony admissible under a hearsay exception, versus is it admissible under the Confrontation Clause? There's no question here that if the statute said that a statement was admissible solely based on a judicial determination of reliability, that would not be the case. It would not necessarily comport with Crawford, which looks not to judicial determinations of reliability, but solely at whether there has been a prior or there is a present opportunity to cross-examine. However, there is nothing in Crawford that says that a state cannot, as a pure evidentiary matter, require that testimony be reliable before it be admitted. And I would think that this issue of reliability would be something that would benefit defendants, in that it provides a lot of leeway for the defendant to be able to make a statement. However, there is no level of protection over and above the Confrontation Clause. So this argument, it confuses the distinction between what is the statutory requirement and what is the Confrontation Requirement, and those are two separate questions that must both be answered before any hearsay testimony is admitted. For the same reason, the fact that the statute does not require that Crawford's Confrontation Requirement be met in every case does not render the statute facially unconstitutional. It just means that there may be a circumstance where the statute might allow testimony that would violate the Confrontation Clause. Now, hopefully, the trial court, in then carrying out the Confrontation Analysis, would say, even though this meets statutory requirements, it doesn't meet constitutional requirements. Therefore, it cannot be admitted. That scenario is not presented on the facts of this case. The argument that the statute is facially unconstitutional cannot prevail simply on this theoretical issue of what might arise in a different case. The statute was constitutionally applied here, the children testified, and therefore, the defendant does not have a meritorious argument that this statute is facially infirm. I'm just going to address one final point on the Melendez-Diaz and its applicability to the case. Melendez-Diaz held that the state could not prove its case by admitting a business record as to the result of a forensic analysis. The state, rather, needed to call the witness to testify and be subject to confrontation. Melendez-Diaz was plainly satisfied here because the state put both of the children on the stand. So therefore, that case really has no direct applicability to the facts here. If the court has no further questions, we would rest on our brief in terms of the statutory fee, and we would ask that this court affirm the judgment of the case before the appellate court. In just a couple of things in response to the state's argument, there was a specific incident that the state did not ask KJK, the girl, about. And that was the incident that was recounted in People's Exhibit 10, which was the second interview that she went on to ask KJK about. And that interview underwent with the sheriff that's recounted in People's Exhibit 10. They never asked her about that in the first instance. The first the jury heard about that particular incident and the details of it was when the sheriff testified. So from that perspective, I don't believe that an argument can be made that she was confronted on the substance of those statements, because the state never asked her about them. It confuses the hearsay exception with a confrontation clause argument. Actually, that's exactly right. Section 115.10 requires you to confuse a hearsay exception with confrontation clause analysis, because particularly where you're dealing with a testimonial statement, the statute still requires you to do the indicia of reliability for purposes of a hearsay exception. And that clearly is gone now that Crawford has been the law since 2004. Just a couple of words about the state's attorney's fee. I would point out that the statute requiring that fee, Section 4-2002, refers specifically to state's attorneys. It's in the county code, and it says when prosecuted or defended by him. Gender issues aside, it's clear that the statute is referring to the state's attorney. I would also point out that that statute was passed in 1990. The statute establishing the state's attorney's appellate prosecutor, however, was passed in 1977. So clearly the legislature knew at the time that the state's attorney's appellate prosecutor existed and what they existed for. If they intended to include the state's attorney appellate prosecutor in the $50 fee, they would have said so and would have made a clear in the statute. And I know in Williams one of the concerns was the funding therefore, and the fact that state's attorneys pay into a pool of money that assists the state's attorney's appellate prosecutor in handling these appeals doesn't invalidate the plain language of the statute. The plain language says what it says, and it says state's attorney. And if the legislature meant to include the state's attorney's appellate prosecutor, they would have done so. And if that's what they intend to do, then it's not up to this court to rewrite the statute for them. Does the state's attorney's office play any role at all in having the appellate prosecutor get involved in this case? To my knowledge, the only role they would have played was to send the information to the state's attorney's appellate prosecutor in the 4th district. I am unaware of any contact. How does the case get from the state's attorney's office to the appellate prosecutor's office? You know, I don't know specifically. I would assume that it's done the same way it's done for the state appellate defender, which is that the information comes from either a public attorney or the state's attorney's office, and if that's the situation, the case is going to come from a state's attorney's office and it's going to be sent to the state appellate prosecutor for it. Is that connection sufficient to justify the $50? My assertion would be no, and the reason for that is for the same reason that people be smith, where a state's attorney is just in the room for a few minutes and they say a few words, no hearing was held, so they're not entitled to a hearing. To the fee. I mean, you know, just putting your name on a brief, does that qualify for being prosecuted or defended by you? There aren't any cases that have talked about that. Nobody's really defined that term, but in logical terminology, and the purpose of the statute is obviously to reimburse the state's attorneys for their efforts. And if they don't do anything other than pass it along to another entity, our position would be that, no, it's not being prosecuted or defended by the state's attorney. It's being prosecuted or defended by another entity entirely. Should it be part of our analysis or our consideration as to whether the counties pay for the services of the appellate prosecutor? My argument would be no. It's only relevant in terms of figuring out exactly where the lines are drawn between the state's attorney and the state's attorney. And the authority of the state's attorney and the authority of the state's attorney appellate prosecutor in terms of what they're doing. There's no suggestion here that one is an agent of the other. So from that perspective, that's the only relevant consideration that one would have in terms of how the respective agencies are funded. You did refer to or indicate that the purpose was to reimburse the state's attorney for costs. The state's attorney's office in the county. So would that same logic apply to the reimbursing the county for costs if the appellate prosecutor is paid by the county to handle it? But the state's attorney appellate prosecutor is not funded entirely by that fund. They also get money directly from the state for purposes of their general operating revenue. As I understand this separate fund, that's just to handle these programs such as the costs involved in doing these appeals. But that's not the only source of their funding, so I don't necessarily think that you can make the statement, first of all, that you're reimbursing the county pursuant to this statute properly. Second of all, it says state's attorney. And once the state's attorney or the counties release those funds to the state's attorney appellate prosecutor, is that money really coming from the state's attorney at all? It's coming from the counties. So who should we be reimbursing? But the statute's very clear that you reimburse the state's attorney. Don't reimburse a separate state entity. The appellate prosecutor statute is pointed out by the state, say that they can represent the people of the state of Illinois only when requested to do so and at the direction of the state's attorney. And further say they can file an argument, a brief in the appellate court with the advice and consent of the state's attorney. Do those portions of that statute play any role in this at all? I think if you had some evidence that the state's attorney had a meaningful role in the appeal, that may play into it. However, that would probably need to be on a case-by-case basis, and more importantly, that certainly didn't occur here. There's no evidence other than a name on a brief that would suggest that the state's attorney did anything other than send the information to the state's attorney's appellate prosecutor. Thank you.